## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

JENNIFER VLASAK, Individually and on Behalf of All Others Similarly Situated, )
)
                Plaintiff, )
)
v. )
)
AFNI, INC, )
)
                Defendant. )

Case No.: 19-cv-1209

**CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

## INTRODUCTION

1.      This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2.      The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3.      Plaintiff Jennifer Vlasak is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.      Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt allegedly incurred for personal, family, or household purposes.

5.      Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that she engaged in a consumer transaction.

6.     Defendant Afni, Inc. ("Afni") is a debt collection agency with its principal offices located at 404 Brock Drive, Bloomington, Illinois 61701.

7.     Afni is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8.     Afni is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

9.     Afni is a debt collector as defined in 15 U.S.C. § 1692a.

<strong><u>FACTS</u></strong>

10.     Sometime prior to November 27, 2018, Plaintiff obtained telecommunications services from Verizon Wireless and/or its affiliated entities ("Verizon").  Plaintiff used these wireless communications services only for personal, family, or household purposes.

11.     At the time Plaintiff obtained wireless services from Verizon, she entered into an agreement to obtain wireless phone services (the "Wireless Services Agreement") and also entered into a separate agreement to purchase an iPhone 7 Plus personal cell phone on credit (the "Device Payment Agreement").  *See* https://www.verizonwireless.com/legal/notices/customer-agreement/ (Wireless Services Agreement Terms & Conditions "Customer Agreement"); https://ss7.vzw.com/is/content/VerizonWireless/Legal/Documents/Footer/device-payment-t-c-122016.pdf (Device Payment Agreement Terms & Conditions "Retail Installment Contract")

12.     Upon information and belief, pursuant to the Device Payment Agreement, Plaintiff was supposed to pay Verizon a total of about $619.00 over 24 months.  The monthly payment amount under the Device Payment Agreement was $25.79.  The Device Payment Agreement had an account number ended in 2566.

13.     On November 27, 2018, Verizon mailed Plaintiff an account statement.  A copy of this account statement is attached to this complaint as Exhibit A.

14.     Exhibit A contains the following:

## Balance past due

| | |
|---|---|
| Previous balance | $168.88 |
| Payment reversed (Oct 29) | $168.81 |
| Payment received - Thank you (Nov 19) | -$337.69 |
| Payment reversed (Nov 26) | $337.69 |

### $337.69
Please pay immediately.

15.     Exhibit A states that Plaintiff made a payment in the amount of $337.69 on or about November 19, 2018.

16.     Exhibit A also states:

## Hi Jennifer, here's your bill for this month.

| | | | |
|---|---|---|---|
| B | Balance past due | | $337.69 |
| | One-time charges and credits | page 3 | $51.39 |
| XL | The new Verizon Plan X Large 16 GB | | $90.00 |
| | Jennifer Vlasak ▇▇▇▇ | page 5 | $58.79 |
| | Jennifer Vlasak | page 5 | $10.00 |
| | Surcharges | | $4.33 |
| | Taxes and government fees | | $8.08 |
| | Total due | | **$560.28** |

$337.69 due immediately
$222.59 due December 19

3

17. <u>Exhibit A</u> further states

## Splitting the bill?

Here are your charges by line, with plan and account charges separated out.

| | |
|---|---|
| Balance past due | $337.69 |
| Plan and account | $113.87 |
| Jennifer Vlasak ███████ | $77.11 |
| Jennifer Vlasak ███████ | $31.61 |

## $560.28

18. <u>Exhibit A</u> states that the total amount due on December 19, 2018 was $560.28, of which $337.69 was overdue and due immediately.

19. <u>Exhibit A</u> further itemizes the $58.79 portion:



# Jennifer Vlasak
███████ | iPhone 7 Plus

**Data usage**

**0.0** GB

| | |
|---|---|
| Smartphone line access (Nov 28 - Dec 27) | $20.00 |
| Device payment 10 of 24 ($619.00/24mo) $361.06 remaining after this month (Agreement ████ 2566) | $25.79 |
| Total Mobile Protection (Nov 28 - Dec 27) | $13.00 |

## $58.79

20. <u>Exhibit A</u> states that, of the $58.79 portion, $25.79 was due under the Device Payment Agreement with an account number ending in 2566:

| | |
|---|---|
| Device payment 10 of 24 ($619.00/24mo) $361.06 remaining after this month (Agreement ████ 2566) | $25.79 |

21. <u>Exhibit A</u> states that the total balance owed as of November 27, 2018 under the Device Payment Agreement was $386.85 but that only $25.79 was actually due under the Device

4

Payment Agreement at the time Exhibit A was mailed. Thus, the amount "remaining after this month" under the Device Payment Agreement was $361.06.

22. Plaintiff was unable to tender payment on or before December 19, 2019, and Verizon suspended Plaintiff's wireless services.

23. On or about December 27, 2018, Verizon mailed another account statement. A copy of this account statement is attached to this complaint as Exhibit B.

24. Exhibit B states the following:

| | | |
|---|---|---|
| Balance past due | | $560.28 |
| One-time charges and credits | page 3 | -$108.03 |
| Jennifer Vlasak ██████████ | page 4 | $25.79 |
| Jennifer Vlasak ██████████ | page 5 | $0.00 |
| Surcharges | | -$0.46 |
| Taxes and government fees | | -$5.93 |
| **Total due** | | **$471.65** |
| | | due immediately |

5

25.  <u>Exhibit B</u> also states:



## Splitting the bill?

Here are your charges by line, with plan and account charges separated out.

| | |
|---|---|
| Balance past due | $560.28 |
| Plan and account | -$70.76 |
| Jennifer Vlasak ███████ | -$6.53 |
| Jennifer Vlasak ███████ | -$11.34 |

## $471.65

26.  <u>Exhibit B</u> further itemizes the $25.79 portion:

# Jennifer Vlasak
████████ | iPhone 7 Plus | Suspended

**Data usage**

## 0.0 GB

Device payment 11 of 24 ($619.00/24mo)          $25.79
$335.27 remaining after this month (Agreement ████2566)

## $25.79

**$33.00 less than last month because of a line suspension.**

27.  <u>Exhibit B</u> states that the balance owed as of December 27, 2018 under the Device Payment Agreement was $361.06 but that only $25.79 was actually due under the Device Payment Agreement at the time <u>Exhibit B</u> was mailed.  Thus, the amount "remaining after this month" under the Device Payment Agreement was $335.27.

28.  On or about January 13, 2019, Verizon mailed Plaintiff another account statement regarding this alleged debt.  A copy of this account statement is attached to this complaint as <u>Exhibit C</u>.

6

29. <u>Exhibit C</u> contains the following:



**Splitting the bill?**

Here are your charges by line, with plan and account charges separated out.

| | |
|---|---|
| Balance past due | $471.65 |
| Plan and account | $335.27 |
| Jennifer Vlasak | $0.00 |
| Jennifer Vlasak | $0.00 |

# $806.92

To see a full breakdown of charges per line, view your bill in My Verizon.

30. <u>Exhibit C</u> further states:

### Balance past due

| | |
|---|---|
| Previous balance | $471.65 |
| No payment received | $0.00 |

## $471.65
Please pay immediately.

### One-time charges

**Plan and account**

| | |
|---|---|
| Device payment buyout charge (payments 12 - 24) (Agreement ▮2566) | $335.27 |

## $335.27

31.     <u>Exhibit C</u> states that the total amount owed to Verizon on January 13, 2019 was $806.92, of which $471.65 was to paid "immediately."

32.     <u>Exhibit C</u> does not instruct the consumer to pay the $335.27 "one-time charges" owed for payments 12-24 under the Device Payment Agreement "immediately."

33.     Exhibit C does not state a due date for the $335.27 "one-time charges" owed for payments 12-24 under the Device Payment Agreement.

34.     On or about January 21, 2019, about a week after Verizon mailed Exhibit C, Afni mailed a debt collection letter to Plaintiff regarding the alleged Verizon debt.  A copy of this letter is attached to this complaint as Exhibit D.

35.     Upon information and belief, Exhibit D is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

36.     Upon information and belief, Exhibit D is a form debt collection letter used by Af to attempt to collect alleged debts.

37.     Upon information and belief, Exhibit D is the first written communication that AFNI sent to Plaintiff regarding the alleged debt to which Exhibit D refers.

38.     Exhibit D contains a statement that largely reflects the statutory "debt validation notice" that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail to the consumer along with, or within five days of, the initial communication:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of the debt or any portion thereof, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

8

39.    Exhibit D also contains the following:

Your VERIZON WIRELESS account has been referred to Afni, Inc. for collection. Please take this opportunity to pay your account balance in full.

***Balance Due: $806.92***

40.    Exhibit D is confusing and misleading to the unsophisticated consumer.

41.    Exhibit D, mailed just a week after Exhibit C, states that the "Balance Due" is $806.92 without disclosing that only a portion of that balance needs to be paid immediately. *See* Exhibit C.

42.    Indeed, upon information and belief, notwithstanding the information in Exhibit D, the maturity of the balance owed under the Device Payment Agreement had not been accelerated.

43.    Verizon treated the Device Payment Agreement as a separate transaction from the Wireless Services Agreement.

44.    Pursuant to the Device Payment Agreement, Plaintiff and Verizon agreed to a transaction in which Plaintiff purchased an iPhone7 Plus, with a deferred balance of $619.00 that was payable in 24 separate installments.

45.    The Device Payment Agreement was a "Consumer Credit Transaction" as that term is defined in the WCA:

**(10)** "Consumer credit transaction" means a consumer transaction between a merchant and a customer in which real or personal property, services or money is acquired on credit and the customer's obligation is payable in installments or for which credit a finance charge is or may be imposed, whether such transaction is pursuant to an open-end credit plan or is a transaction involving other than open-end credit. The term includes consumer credit sales, consumer loans, consumer leases and transactions pursuant to open-end credit plans.

Wis. Stat. § 421.301(10).

46.     In entering the Device Payment Agreement, Plaintiff was a "customer" and Verizon was a "merchant" as those terms are defined in the WCA.  Wis. Stat. §§ 421.301(17) and (25).

47.     The iPhone7 Plus that Plaintiff purchased from Verizon pursuant to the terms of the Device Payment Agreement was personal property for which payment was deferred and agreed to made in 24 installments.  *See,* Wis. Stat. § 421.301(30)(b) ("payable in installments" means that payment is required or permitted by agreement to be made in more than four installments).

48.     The WCA provides that:

A merchant may not accelerate the maturity of a consumer credit transaction, commence any action except as provided in s. 425.205(6), or demand or take possession of collateral or goods subject to a consumer lease other than by accepting a voluntary surrender thereof (s. 425.204), unless the merchant believes the customer to be in default (s. 425.103), and then only upon the expiration of 15 days after a notice is given pursuant to s. 425.104 if the customer has the right to cure under this section.

49.     The account statements Plaintiff received from Verizon are not a notice of right to cure.  *See Johnson v. LVNV Funding*, No. 13-cv-1191, 2016 U.S. Dist. LEXIS 19651, at *18 (E.D. Wis. Feb. 18, 2016) ("treating a monthly billing statement as both that and a notice of right to cure goes against the purposes of the WCA.").

50.     Exhibit D's failure to separately itemize the portions of the debt that are past due from the portions owed under the Device Payment Agreement is confusing and misleading to the unsophisticated consumer.  *Cf., Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757 (7th Cir. 2009) ("all *past-due amounts* accurately may be described as principal due").

51.     Indeed, in mailing Exhibit C, Verizon itemized the past due amount separately from the amounts owed under the Device Payment Agreement, and expressly instructed the

consumer to pay the past-due portion "immediately" without requesting immediate payment of the amount owed under the Device Payment Agreement.

52.  Exhibit D states the character, amount, and legal status of the debt in a confusing and misleading manner.

53.  Plaintiff read Exhibit D.

54.  Plaintiff was confused and misled by Exhibit D.

55.  The unsophisticated consumer would be confused and misled by Exhibit D.

56.  Plaintiff had to spend time and money to investigate Exhibit D and the possible consequences of responding to Exhibit D.

57.  Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibit D.

### *The FDCPA*

58.  The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads

11

a concrete injury-in-fact for purposes of standing."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 \*21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 \*8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 \*9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at \*5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

59.     Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive

12

debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

60.     Misrepresentations of the character, amount or legal status of any debt, injure or risk injury to interests expressly protected by Congress in the FDCPA. *See Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt., Inc.*, 18-cv-1484 (E.D. Wis. August 9, 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

61.     15 U.S.C. § 1692e generally prohibits the "use [of] any false, deceptive, or misleading representation or means in connection with the collection of any debt."

62.     15 U.S.C. § 1692e(2)(A) specifically prohibits "the false representation of the character, amount, or legal status of any debt."

63.     15 U.S.C. § 1692e(10) specifically prohibits: "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

64.     15 U.S.C. § 1692f generally prohibits the "use [of] unfair or unconscionable means to collect or attempt to collect any debt."

65.     15 U.S.C. § 1692g(a)(1) requires that the debt collector state the amount of the debt in a non-confusing manner. *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000):

> It is no excuse that it was "impossible" for the defendants to comply when as in this case the amount of the debt changes daily. What would or might be impossible for the defendants to do would be to determine what the amount of the debt might be at some future date if for example the interest rate in the loan agreement was variable. What they certainly could do was to state the total amount due--interest and other charges as well as principal--on the date the dunning letter was sent. We think the statute required this.

66.     While *Miller* addressed a debt collector's obligation to provide the amount of the debt under 15 U.S.C. § 1692g(a)(1), the Seventh Circuit has held that the standards for claims under § 1692e and § 1692g are the same. *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 759 (7th Cir. 2006).

> We cannot accept the district court's view that claims brought under § 1692e or § 1692f are different from claims brought under § 1692g for purposes of Rule 12(b)(6) analysis. Whether or not a letter is 'false, deceptive, or misleading' (in violation of § 1692e) or 'unfair or unconscionable' (in violation of § 1692f) are inquiries similar to whether a letter is confusing in violation of § 1692g. After all, as our cases reflect, the inquiry under §§ 1692e, 1692g and 1692f is basically the same: it requires a fact-bound determination of how an unsophisticated consumer would perceive the letter.")

14

## *The WCA*

67.     The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions.  Wis. Stat. § 421.102(2).

68.     The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state."  *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

69.     To further these goals, the Act's protections must be "liberally construed and applied."  Wis. Stat. § 421.102(1); *see also* § 425.301.

70.     "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives."  *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983).  Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

71.     To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies.  The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts.  *See* Wis. Stats. § 427.104.

72.     The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions.  Wis. Stats. § 422.202(1).  The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and

injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

73. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

74. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15 (Wis. 2010). In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

75. Wis. Stat. § 425.302 creates a cause of action for "all violations for which no other remedy is specifically provided" by the WCA.

76. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer … in such a manner as can reasonably be expected to threaten or harass the customer."

77. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer …."

78. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt, or threaten to enforce a right with knowledge or reason to know that the right does not exist."

16

## COUNT I – FDCPA

79.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

80.    <u>Exhibit D</u> represents the character, amount, and legal status of the debt in a confusing and misleading manner.

81.    <u>Exhibit D</u> attempts to amounts owed under the Device Payment Agreement before those amounts have actually become due.

82.    <u>Exhibit D</u> is confusing, deceptive, misleading, and unfair to the unsophisticated consumer.

83.    Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), 1692f, 1692f(1), and 1692g(a)(1).

## COUNT II – WCA

84.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

85.    <u>Exhibit D</u> represents the character, amount, and legal status of the debt in a confusing and misleading manner.

86.    <u>Exhibit D</u> attempts to amounts owed under the Device Payment Agreement before those amounts have actually become due.

87.    <u>Exhibit D</u> is confusing, deceptive, misleading, and unfair to the unsophisticated consumer.

88.    Defendant violated Wis. Stat. §§ 425.105, 427.104(1)(g), 427.104(1)(h), and 427.104(1)(j).

## CLASS ALLEGATIONS

89.    Plaintiffs bring this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit D to the complaint in this action, (c) seeking to collect a Verizon debt, (d) that included amounts owed under a Device Payment Agreement before that Device Payment Agreement had reached its maturity, (e) where the debt was incurred for personal, family, or household purposes, (f) and the letter was mailed between August 20, 2018 and August 20, 2019, inclusive, (e) and was not returned by the postal service.

90.    The Class is so numerous that joinder is impracticable.  Upon information and belief, there are more than 50 members of the Class.

91.    There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA and WCA.

92.    Plaintiff's claims are typical of the claims of the Class members.  All are based on the same factual and legal theories.

93.    Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

94.    A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

95.    Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a)    actual damages;

(b)    statutory damages;

(c)    attorneys' fees, litigation expenses and costs of suit; and

(d)    such other or further relief as the Court deems proper.

Dated:  August 20, 2019

**ADEMI & O'REILLY, LLP**

By:    /s/ Mark A. Eldridge
      John D. Blythin (SBN 1046105)
      Mark A. Eldridge (SBN 1089944)
      Jesse Fruchter (SBN 1097673)
      Ben J. Slatky (SBN 1106892)
      3620 East Layton Avenue
      Cudahy, WI 53110
      (414) 482-8000
      (414) 482-8001 (fax)
      jblythin@ademilaw.com
      meldridge@ademilaw.com
      jfruchter@ademilaw.com
      bslatky@ademilaw.com
